## Schutt *versus* Evans, Administrator.

1. All consecutive securities growing out of a usurious contract are tainted therewith, and none of them, however remote, can be free from it, if the descent can be traced.

2. A. was an accommodation indorser on B.'s note to C. The note was renewed several times, and each time the new note included usurious interest. B. becoming insolvent, still another note was made out in A.'s name, dropping B. from the transaction. Suit being brought upon this note:

   *Held,* that A. had a defence to the note to the amount of the usury.

3. Bly *v.* Bank, 29 P. F. S., 453, and Macungie Bank *v.* Hottenstein, 8 Norris, 328, distinguished.

April 22d, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Montgomery county :* Of January Term 1885, No. 422.

Assumpsit, by Oliver N. Evans, administrator of Jared Evans, deceased, against Jacob F. Schutt, upon a promissory note given by the said defendant to Jared Evans, deceased. Pleas, non-assumpsit and payment with leave, etc.

On the trial, before BOYER, P. J., the plaintiff offered in evidence the following promissory note, dated at Norristown, January 6th, 1875 :

One month after date I promise to pay to the order of Jared Evans one hundred dollars, without defalcation for value received.  JACOB F. SCHUTT.

Also certificate of notice of protest dated February 9th, 1875, and letters of administration on the estate of Jared Evans, granted by the register of wills at Philadelphia, dated August 4th, 1875. Plaintiff then rested.

The defendant called Anna J. Evans, and offered to prove by her that the note in suit was the last of a series and part of a usurious contract, as follows, viz.: " That a note of $400 was given by Samuel D. Moyer to the order of Jacob F. Schutt, as an accommodation indorser for that amount, and upon maturity of the $400 note there was a renewal for the sum of $300, $100 upon the principal being paid. Upon the first note there was a bonus of $50 paid, and upon the second a bonus of $40 was paid. Upon the maturity of the second note there was a third note given in renewal by Samuel D. Moyer, to the order of Schutt, for $200, and a bonus of $30

13 OUTERBRIDGE—40

[Schutt *v.* Evans.]

paid upon that. Upon the maturity of the third note of the series Moyer was insolvent, and upon application to renew the note made by Schutt to Jared Evans, it was agreed between Schutt and Evans, at the instance of Jared Evans, that the name of Moyer should be dropped, for the reason that he was insolvent. In pursuance of that understanding the note now in suit, amounting to $100, was given by Schutt as maker, he, Schutt, at the time paying to Evans $100 on the renewal."

Objected to by plaintiff. Objection sustained. Exception.

Verdict and judgment for plaintiff. Whereupon defendant took this writ, assigning for error the action of the court in rejecting defendant's offer of evidence as above.

*Theodore W. Bean*, for plaintiff in error.—The taint of usury attaches to all consecutive obligations growing out of an original usurious transaction, and none of the descendant obligations can be free from it, if the descent can be traced: Earnest *v.* Hoskins, 4 Out., 551; Byles on Bills, *306; Glassfurd *v.* Laing, 1 Camp., 149; Dewar *v.* Span, 3 T. R., 426; Brinckerhoff *v.* Foote, 1 Hoff., 291; Vickery *v.* Dickson, 35 Barb., 96; Campbell *v.* Sloan, 12 P. F. S., 481.

*Montgomery Evans*, (*Charles Hunsicker* with him), for defendant in error, cited: Bly *v.* Bank, 29 P. F. S., 453; Macungie Savings Bank *v.* Hottenstein, 8 Norris, 328.

A distinction has been attempted to be shown between the case of Macungie Bank *v.* Hottenstein and the one at bar. The facts are identical except in names. Compare the two cases:

A note is given by { William Grim / Samuel D. Moyer } to the order of { Levi S. Hottenstein / Jacob F. Schutt } an accommodation endorser, and endorsed by him to the { Macungie Savings Bank / Jared Evans } and this note is renewed repeatedly by the same parties and usury is paid by { William Grim / Samuel D. Moyer }. Finally, by agreement of the parties, a new note is substituted in settlement of the indebtedness of { William Grim / Samuel D. Moyer } of which { Levi S. Hottenstein / Jacob F. Schutt } is the maker, drawn to the order of { Brobst, for endorsement to the bank / Jared Evans } and the name of { William Grim / Samuel D. Moyer } is dropped. This new note is renewed, and upon the last renewal given by { Levi S. Hottenstein / Jacob F. Schutt } suit is brought by the holder { Macungie Bank / Jared Evans' Adm'r } and the defendant { Levi S. Hottenstein / Jacob F. Schutt } claims a set off for the usury, not paid by him but by { William Grim / Samuel D. Moyer }.

This court held that the defence set up cannot be sustained. The only difference in the two cases is that in the former one, the bank, presumably for the sake of complying with the general banking rule of requiring "two name paper" in dis-

counts, had the Hottenstein note and renewals drawn to the order of a third party, to be endorsed *pro forma* to the bank. The real payee was the bank, and the perfunctory endorser nowhere appears as an interested party.

If the original maker who paid the usury remained, the usury paid by him can be made a defence by any party original or added, who is called upon to pay. But if the party who paid the usury is dropped in the course of settlement of the debt, and a new party becomes the debtor, it is a case of novation.

Mr. Justice PAXSON delivered the opinion of the court, June 4th, 1885.

This was a suit upon a promissory note for $100 made by Jacob F. Schutt to the order of Jared Evans. Upon the trial below the defendant offered to prove that Schutt was the accommodation indorser upon a note of $400 given by one Samuel D. Moyer to Evans; that upon the maturity of said note it was renewed for $300, and subsequently for $200; that $100 of the principal was paid at each renewal, with a bonus of $50 the first time and $40 the second. Upon the maturity of the third note, Moyer, the maker, was insolvent, and upon an arrangement between Evans and Schutt, the name of Moyer was dropped, because of his insolvency, and Schutt gave his own note for $100 in renewal, and paid $100 in cash. This offer was for the purpose of showing the contract to be usurious. The learned judge rejected the offer and sealed a bill for the defendant.

In Campbell v. Sloan, 12 P. F. S., 481, it was held in the case of an usurious contract that the original taint attaches to all consecutive securities growing out of the original transaction, and none of them, however remote, can be free from it, if the descent be traced. Here no one will contend that if the last renewal had been made by Moyer, and the suit had been against him, he could not have defended to the extent of the excess of interest paid. Does the fact that the principal debtor has dropped out of the note by reason of his insolvency, and his surety has come to the front and assumed the burden, make any substantial difference? It is the same debt, now assumed by one of the parties to the note. The payment of the excess of interest by Moyer was in law a payment of so much of the principal, and inured to the benefit of the surety. So that when Schutt came to renew the $200 note, $90 of it had been paid. When he gave his own note for $100 and paid $100 in cash, the transaction included $90 of usury. Can he defend against this? If not, the whole doctrine of usury has been strangely misunderstood.

The learned judge below relied upon Bly *v.* Second National Bank of Titusville, 29 P. F. S., 453, and Macungie Bank *v.* Hottenstein, 8 Norris, 328. A careful examination of those cases, however, has satisfied us they do not rule this. The case first cited was a suit by a National bank, and was determined under the Act of Congress regulating National banks, the 30th section of which provides that when illegal interest is knowingly reserved or charged, or agreed to be paid, it shall be held and adjudged a forfeiture of the entire interest which the note or evidence of debt carries with it. When it has been paid, the person paying the same, or his legal representative, may recover back in an action of debt, twice the amount of interest thus paid from the association taking or receiving the same. The affidavit or defence in that case alleged that all the usurious interest had been paid by the Climax Mower and Reaper Company, and this court said upon that point: "On all the loans and discounts Andrews was an accommodation endorser. He borrowed no money, paid no interest, and has no right of action on account of illegal interest paid by the company. . . . . . That company may yet bring suit, if they have not yet settled the claim."

It will be noticed that the Act of Congress strikes down the usurious contract to the extent of the interest. It strikes at interest as interest. If more than the lawful interest has been charged or reserved, the interest bearing power of the note or other obligation is destroyed. The whole stipulated interest is forfeited. When it has been paid, the person paying the same, or his legal representative, may recover back twice the amount from the person receiving it. Under this Act the right of action to recover back usurious interest is given to the person paying the same and to no one else. Hence we understand distinctly why it was said in Bly *v.* Second National Bank, that the right of action to recover back the interest paid was in the Climax Mower and Reaper Company; and that said company might yet bring a suit therefor, if they had not settled the claim.

The case in hand rests upon our Act of 28th of May, 1858, P. L., 622, which differs widely from the National Bank Act. Under our Statute there is no penalty or forfeiture. A man may lawfully contract for any rate of interest, but he can only be compelled to pay six per cent. If he has not paid the debt he can defend against the excess; if he has paid the whole debt with more than legal interest, he can recover back the excess by an action commenced within six months. Thus it will be seen that there is no usury under this Act of 1858 until the borrower has paid the whole debt with interest. It follows that up to the time Schutt renewed the note there

had been no usury. Moyer had no claim to recover back anything from Evans, for he had not paid what he actually owed. He had paid no usury. That fell upon Schutt. When he renewed the $200 note by giving his own note for $100 and paying $100 in cash, the transaction, as before stated, included $90 of usurious interest. If he cannot defend against this no one can.

In Macungie Bank v. Hottenstein, *supra*, there was a clear novation. The old debt was extinguished and a new contract made, and a new party brought in. It was said in the opinion of the court: "The bank's claim against Grim was extinguished when his notes were surrendered to Hottenstein." In this case in hand there was no extinguishment of the claim. The debt remained; it was renewed by the only solvent party, and the renewal note was a descendant obligation to which the taint of the usury attaches. We are of opinion that it was error to exclude the evidence.

> Judgment reversed and a venire facias de novo awarded.